IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| Commonwealth Scientific and Industrial Research Organisation, | § § § | Hon. Leonard Davis |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 6:09-cv-400 |
| Sony Corporation, Sony Corporation of America Sony Computer Entertainment Inc. Sony Computer Entertainment America Inc. and Sony Electronics Inc., | § § § § § § | **JURY TRIAL DEMANDED** |
| Defendants. | § § | |

**SONY CORPORATION, SONY CORPORATION OF AMERICA, SONY COMPUTER
ENTERTAINMENT INC., SONY COMPUTER ENTERTAINMENT AMERICA INC.'S
AND SONY ELECTRONICS INC.'S ANSWER AND SONY ELECTRONICS INC. AND
SONY COMPUTER ENTERTAINMENT AMERICA INC.'S COUNTERCLAIMS TO
PLAINTIFF'S ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

Defendants and Counterclaimants Sony Corporation, Sony Corporation of America, Sony

Computer Entertainment Inc., Sony Computer Entertainment America Inc. and Sony Electronics

Inc. (collectively "Sony") hereby file their Answer to Plaintiff Commonwealth Scientific and

Industrial Research Organisation ("CSIRO")'s Original Complaint for Patent Infringement in

this action (the "Complaint").  Sony Computer Entertainment America Inc. and Sony Electronics

Inc. also hereby file their Counterclaims to the Complaint.

## I.      SONY'S ANSWER TO COMPLAINT

### THE PARTIES

1.      Sony is without knowledge sufficient to admit or deny the allegations of paragraph

1 of CSIRO's Complaint, and Sony therefore denies them.

2.      Sony admits the allegations of paragraph 2 of CSIRO's Complaint, but notes that the correct address of Sony Corporation's principal place of business is 1-7-1 Konan, Minato-ku, Tokyo 108-0075.

3.      Sony admits the allegations of paragraph 3 of CSIRO's Complaint.

4.      Sony admits the allegations of paragraph 4 of CSIRO's Complaint, but notes that the correct address of Sony Computer Entertainment Inc.'s principal place of business is 2-6-21 Minami Aoyama, Minato-ku, Tokyo 107-0062.

5.      Sony admits the allegations of paragraph 5 of CSIRO's Complaint.

6.      Sony admits the allegations of paragraph 6 of CSIRO's Complaint, but notes that the correct address of Sony Electronics Inc.'s principal place of business is 16530 Via Esprillo, San Diego, California 92127.

## JURISDICTION AND VENUE

7.      Sony admits that this is a claim for patent infringement purportedly arising under the patent laws of the United States.  Sony denies that venue is proper in this district.  Sony denies that each defendant has done business in this district.  Sony denies that it has committed acts of infringement in this or in any other district, and denies that it continues to commit acts of infringement in this or in any other district.  Sony denies that CSIRO is entitled to any relief against Sony.  Sony is without knowledge sufficient to admit or deny the remaining allegations of paragraph 7 of CSIRO's Complaint, and Sony therefore denies them.

## INFRINGEMENT OF U.S. PATENT NO. 5,487,069

8.      Sony denies that U.S. Patent 5,487,069 ("the '069 patent") was duly and legally issued, and denies that CSIRO holds all rights and interest in the '069 patent.  Sony is without knowledge sufficient to admit or deny the remaining allegations of paragraph 8 of CSIRO's

Complaint, and Sony therefore denies them.

9.      Sony denies the allegations of paragraph 9 of CSIRO's Complaint.

10.    Sony denies the allegations of paragraph 10 of CSIRO's Complaint.

11.    Sony denies the allegations of paragraph 11 of CSIRO's Complaint.

12.    Paragraph 12 of CSIRO's Complaint states CSIRO's demand for a trial by jury to which no response is believed to be necessary.

### CSIRO'S PRAYER FOR RELIEF

Sony hereby incorporates by reference its answers to all paragraphs in CSIRO's Complaint as though fully set forth herein.  Sony denies that CSIRO is entitled to the relief sought in paragraphs 13.a – 13.e of CSIRO's Complaint or otherwise.

### AFFIRMATIVE DEFENSES

In addition to the defenses described below, Sony reserves all affirmative defenses under Rule 8(c) of the Federal Rules of Civil Procedure, the patent laws of the United States and any other defenses, at law or in equity, which may now exist or in the future may be available based on discovery and further factual investigation in this case.

### First Affirmative Defense

1.    Upon information and belief, CSIRO does not have full right, title, and interest in the '069 patent, and therefore CSIRO's claims are barred, in whole or in part, because CSIRO lacks standing to seek relief for such claims.

### Second Affirmative Defense

2.    Sony does not and has not directly infringed, either literally or under the doctrine of equivalents, or induced or contributed to the infringement of any valid claim of the '069 patent.

**Third Affirmative Defense**

3.     The claims of the '069 patent are invalid because they fail to comply with the conditions and requirements for patentability set forth in 35 U.S.C. § 1 *et seq.*, including but not limited to 35 U.S.C. §§ 101, 102, 103, 112, and 132.

**Fourth Affirmative Defense**

4.     Upon information and belief, the '069 patent is unenforceable due to inequitable conduct committed during its prosecution and reexamination.

5.     Upon information and belief, the named CSIRO inventors, as described below, and/or others substantively involved in the prosecution of the application leading to the '069 patent were aware of information material to the patentability of the claims of the '069 patent, and they withheld that information from the U.S. Patent & Trademark Office ("USPTO") with the intent to deceive the USPTO.

6.     The withholding of material prior art with the intent to deceive the USPTO is a violation of the duty of disclosure under 37 C.F.R. § 1.56 and constitutes inequitable conduct.

7.     On January 10, 1994, CSIRO filed with the USPTO a declaration signed by all of the named inventors on the '069 patent—including Dr. Terence Percival ("Dr. Percival"), Mr. Graham Daniels ("Mr. Daniels"), and Dr. John O'Sullivan ("Dr. O'Sullivan").

8.     In that declaration, the inventors acknowledged their duty under 37 C.F.R. § 1.56 to disclose to the USPTO all information known to them to be material to patentability.

9.     The duty to disclose was a continuing one, continuing until and through the date of issuance of the '069 patent.

10.     On February 3, 1995, CSIRO filed with the USPTO an Information Disclosure Statement ("IDS") "in compliance with the duty of disclosure set forth in 37 C.F.R. 1.56."

4

11. Upon information and belief, the following are specific items of prior art that CSIRO and the named inventors identified below intentionally withheld from the USPTO.

**The Percival Paper**

12. While the IDS disclosed certain prior art publications to the USPTO, it did not disclose a publication entitled "Wireless Systems at High Bit Rates – Technical Challenges" ("the Percival paper").

13. The Percival paper was authored by two of the CSIRO researchers named as inventors in the '069 patent, Dr. Terence Percival and Dr. John O'Sullivan, as well as a third CSIRO author, Alan Young.

14. Upon information and belief, CSIRO published, distributed, and presented the Percival paper to members of the public on November 12, 1992 at the First International Workshop on Mobile and Personal Communications Systems held at the University of South Australia in Adelaide, Australia.

15. The Percival paper was a product of the CSIRO wireless LAN research that resulted in the '069 patent. Every page of the paper bears the words "CSIRO Division of Radiophysics," and the "Acknowledgments" section of the paper states:

> The work presented here is a summary of the barriers and solutions to providing a high-speed WLAN system. The work is a result of the discussions held over the last twelve months with a large number of colleagues in the CSIRO Institute of Information Science and Engineering and Macquarie University.

16. Because the Percival paper was published more than one year prior to the actual filing date of the U.S. application leading to the '069 patent (i.e., November 23, 1993) (hereafter "The Application"), it is prior art to the '069 patent under 35 U.S.C. §§ 102(b) and/or 103(a).

17. The Percival paper discloses all of the elements of several of the issued and

originally-filed claims of the '069 patent, and it discloses most, if not all, of the elements of the remaining issued and originally-filed claims.

18.     The Percival paper is not cumulative to the references of record in the '069 patent.

19.     For at least these reasons, the Percival paper is highly material to the patentability of both the issued and the originally-filed claims of the '069 patent.

20.     The Percival paper deserved to be considered by the examiner(s) in making decisions regarding patentability of The Application.

21.     Upon information and belief, at least two of the named inventors, as described above, were aware of the Percival paper at, before, and during the filing of the IDS and The Application.

22.     Upon information and belief, at least two of the named inventors, as described above, intentionally did not disclose the Percival paper to the USPTO and/or intentionally acted in such a way to ensure that the Percival paper was not disclosed to the USPTO.

23.     Upon information and belief, at least two of the named inventors, as described above, intentionally did not disclose the Percival paper to the USPTO with the intention of misleading the USPTO as the disclosure would have been material to the patentability of The Application.

**The Barry Paper**

24.     The IDS also did not disclose a publication entitled "High-Speed Nondirective Optical Communications for Wireless Networks" ("the Barry paper").

25.     John R. Barry, Joseph M. Kahn, Edward A. Lee, and David G. Messerschmitt authored the Barry Paper.

26.     The Barry paper was known to at least two of the '069 patent inventors, Dr. Terence Percival and Dr. John O'Sullivan, because it was cited in the Percival paper.

27.     The Barry paper disclosed a wireless LAN using multicarrier modulation and was published in the November 1991 issue of IEEE Network Magazine, a printed publication widely disseminated to persons of ordinary skill in the relevant art.

28.     Because the Barry paper was published more than one year prior to the actual filing date of The Application, it is prior art to the '069 patent under 35 U.S.C. §§ 102(b) and/or 103(a).

29.     The Barry paper discloses all of the elements of several of the issued and originally-filed claims of the '069 patent, and it discloses most, if not all, of the elements of the remaining issued and originally-filed claims.

30.     The Barry paper is not cumulative to the references of record in the '069 patent.

31.     For at least these reasons, the Barry paper is highly material to the patentability of both the issued and the originally-filed claims of the '069 patent.

32.     The Barry paper deserved to be considered by the examiner(s) in making decisions regarding patentability of The Application.

33.     Upon information and belief, at least two of the named inventors, as described above, were aware of the Barry paper at, before, and during the filing of the IDS and The Application.

34.     Upon information and belief, at least two of the named inventors, as described above, intentionally did not disclose the Barry paper to the USPTO and/or intentionally acted to ensure that the Barry paper was not disclosed to the USPTO.

35.     Upon information and belief, at least two of the named inventors, as described above, intentionally did not disclose the Barry paper to the USPTO with the intention of misleading the USPTO as the disclosure would have been material to the patentability of The Application.

**The Rault Paper**

36.     The IDS also did not disclose a publication entitled "The Coded Orthogonal Frequency Division Multiplexing (COFDM) Technique, and its Application to Digital Radio Broadcasting Towards Mobile Receivers" by J.C. Rault, D. Castelain, and B. Le Floch ("the Rault paper"), published, distributed, and presented to members of the public in 1989.

37.     Because the Rault paper was published more than one year prior to the actual filing date of The Application, it is prior art to the '069 patent under 35 U.S.C. §§ 102(b) and/or 103(a).

38.     The Rault paper discloses most or all of the elements of the issued and originally-filed claims of the '069 patent.

39.     For example, the abstract of such publication states:[1]

> The broadcasting channel towards mobile receivers, especially in a dense urban area, is particularly hostile, which makes the transmission of high bit rate very challenging.
>
> The conjunction of an Orthogonal Frequency Division Multiplexing (OFDM) technique and a convolutional coding scheme (associated to a Viterbi decoding algorithm) is a promising solution (COFDM) studied at CCETT, that is suitable to cope with such a channel.
>
> In the first part of the paper, the theoretical principles of the

---

[1] CH2682 – 3/89/0000-0428, © 1989 IEEE, CSI0061454.

system are detailed.  The second part concerns the realization of a complete COFDM system, designed within the framework of the DAB (Digital Audio Broadcasting) EUREKA 147 project, which is able to broadcast 5.6Mbit/s in a bandwidth of 7MHz.  For the time being, this rate corresponds to 16 high quality stereophonic programs.  Finally, network aspects are pointed out as far as the introduction of a new radio broadcasting service is concerned.

40.     The Rault paper is not cumulative to the references of record in the '069 patent.

41.     For at least these reasons, the Rault paper is highly material to the patentability of both the issued and the originally-filed claims of the '069 patent.

42.     The Rault paper deserved to be considered by the examiner(s) in making decisions regarding patentability of The Application.

43.     Upon information and belief, at least one of the named inventors, Dr. Percival, was aware of the Rault paper before the issuance of the '069 patent.

44.     Upon information and belief, at least one of the named inventors, Dr. Percival, intentionally did not disclose the Rault paper to the USPTO and/or intentionally acted in such a way to ensure that the Rault paper was not disclosed to the USPTO.

45.     Upon information and belief, at least one of the named inventors, Dr. Percival, intentionally did not disclose the Rault paper to the USPTO with the intention of misleading the USPTO as the disclosure would have been material to the patentability of The Application.

**The Le Floch Paper**

46.     The IDS also did not disclose a publication entitled "Digital Sound Broadcasting to Mobile Receivers" by Bernard Le Floch, Roselyne Halbert-Lassalle, and Damien Castelain ("the Le Floch paper"), published, distributed, and presented to members of the public in 1989.

47.     Because the Le Floch paper was published more than one year prior to the actual filing date of The Application, it is prior art to the '069 patent under 35 U.S.C. §§ 102(b) and/or 103(a).

48.     The Le Floch paper discloses most or all of the elements of the issued and originally-filed claims of the '069 patent.

49.     The Le Floch paper's "system" is outlined as follows:[2]

> The system described in this article, combining spectrum and power efficiency, is mainly based on the conjunction of the Orthogonal Frequency Division Multiplexing technique (already proposed for HF data transmission in an ionospheric channel or for transmissions through telephone networks [3] [4]), and a coding strategy associated with diversity in the frequency domain.

50.     The Le Floch paper is not cumulative to the references of record in the '069 patent.

51.     For at least these reasons, the Le Floch paper is highly material to the patentability of both the issued and the originally-filed claims of the '069 patent.

52.     The Le Floch paper deserved to be considered by the examiner(s) in making decisions regarding patentability of The Application.

53.     Upon information and belief, at least one of the named inventors, Dr. Percival, was aware of the Le Floch paper before the issuance of the '069 Patent.

54.     Upon information and belief, at least one of the named inventors, Dr. Percival, intentionally did not disclose the Le Floch paper to the USPTO and/or intentionally acted to ensure that the Le Floch paper was not disclosed to the USPTO.

---

[2] 0098 3063/89/0200 0493501, © 1989 IEEE, CSI0042438.

55.     Upon information and belief, at least one of the named inventors, Dr. Percival, intentionally did not disclose the Le Floch paper to the USPTO with the intention of misleading the USPTO as the disclosure would have been material to the patentability of The Application.

**The Bingham Paper**

56.     The IDS also did not disclose a publication entitled "Multicarrier Modulation for Data Transmission:  An Idea Whose Time Has Come" by John A. C. Bingham ("the Bingham paper"), published, distributed, and presented to members of the public in 1990.

57.     Because the Bingham paper was published more than one year prior to the actual filing date of The Application, it is prior art to the '069 patent under 35 U.S.C. §§ 102(b) and/or 103(a).

58.     The Bingham paper discloses most or all of the elements of the issued and originally-filed claims of the '069 patent.

59.     The Bingham paper is not cumulative to the references of record in the '069 patent.

60.     For at least these reasons, the Bingham paper is highly material to the patentability of both the issued and the originally-filed claims of the '069 patent.

61.     The Bingham paper deserved to be considered by the examiner(s) in making decisions regarding patentability of The Application.

62.     Upon information and belief, at least one of the named inventors, Dr. Percival, was aware of the Bingham paper before the issuance of the '069 Patent.

63.     Upon information and belief, at least one of the named inventors, Dr. Percival, intentionally did not disclose the Bingham paper to the USPTO and/or intentionally acted to ensure that the Bingham paper was not disclosed to the USPTO.

64.     Upon information and belief, at least one of the named inventors, Dr. Percival, intentionally did not disclose the Bingham paper to the USPTO with the intention of misleading the USPTO as the disclosure would have been material to the patentability of The Application.

**The Mitzlaff Paper**

65.     The IDS also did not disclose a publication entitled "Radio Propagation and Anti-Multipath Techniques in the WIN Environment," 5 Network, IEEE 21-26 (November 1991) ("the Mitzlaff paper"), published, distributed, and presented to members of the public in 1991.

66.     Because the Mitzlaff paper was published more than one year prior to the actual filing date of The Application, it is prior art to the '069 patent under 35 U.S.C. §§ 102(b) and/or 103(a).

67.     The Mitzlaff paper discloses most or all of the elements of the issued and originally-filed claims of the '069 patent.

68.     The Mitzlaff paper is not cumulative to the references of record in the '069 patent and itself is not of record in the '069 patent.

69.     For at least these reasons, the Mitzlaff paper is highly material to the patentability of both the issued and the originally-filed claims of the '069 patent.

70.     The Mitzlaff paper deserved to be considered by the examiner(s) in making decisions regarding patentability of The Application.

71.     Upon information and belief, at least one of the named inventors, Dr. Percival, was aware of the Mitzlaff paper before the issuance of the '069 Patent.

72.     Upon information and belief, at least one of the named inventors, as described above, intentionally did not disclose the Mitzlaff paper to the USPTO and/or intentionally acted to ensure that the Mitzlaff paper was not disclosed to the USPTO.

73.     Upon information and belief, at least one of the named inventors, as described above, intentionally did not disclose the Mitzlaff paper to the USPTO with the intention of misleading the USPTO as the disclosure would have been material to the patentability of The Application.

**HF Radios and Modems**

74.     The IDS also did not disclose the existence of high-frequency modems and high-frequency radios ("HF radios and modems").

75.     HF radios and modems have been in existence since as early as the 1960's. Examples of HF radios and modems include an HF radio system called "Piccolo," the KATHRYN system, and marine HF radio.

76.     Because HF radios and modems were offered for sale, sold, made, and used more than one year prior to the actual filing date of The Application, they are prior art to the '069 patent under 35 U.S.C. §§ 102(b) and/or 103(a).

77.     HF radios and modems disclose most or all of the elements of the issued and originally-filed claims of the '069 patent.

78.     HF radios and modems were material to The Application and they deserved to be considered by the examiner(s) in making decisions regarding patentability of The Application.

79.     Upon information and belief, at least two of the named inventors, Graham Daniels and John O'Sullivan, were aware of HF radios and modems at, before, and during the filing of the IDS and The Application.

80.     Upon information and belief, at least two of the named inventors, as described above, intentionally did not disclose HF radios and modems to the USPTO and/or intentionally acted to ensure that these items were not disclosed to the USPTO.

81.    Upon information and belief, at least two of the named inventors, as described above, intentionally did not disclose HF radios and modems to the USPTO with the intention of misleading the USPTO as the disclosure would have been material to the patentability of The Application.

82.    In sum, each of the above described papers and HF radios and modems discloses most or all of the elements of the issued and originally-filed claims of the '069 patent.  Thus, the named CSIRO inventors, as described above, and/or others substantively involved in the prosecution of the '069 patent knew or reasonably should have known that the above described papers and HF radios and modems would have been important to and carefully considered by the examiner in deciding whether to allow the claims.

83.    Despite the high materiality of the above described papers and HF radios and modems and the written acknowledgment by the inventors and CSIRO of their duty to disclose material prior art, none of this prior art was disclosed to the USPTO.

**Arguments For Patentability**

84.    In response to a prior art rejection the USPTO examiner entered against the originally-filed claims, CSIRO canceled the originally-filed claims and added new claims in an Amendment filed on June 30, 1995.

85.    In arguing for the patentability of the new claims, CSIRO asserted that the prior art cited by the USPTO examiner did not disclose several specific elements of the new claims.

86.    All of the specific elements relied upon by CSIRO for its patentability arguments are disclosed in the aforementioned prior art, which was concealed from the USPTO.

87.    Thus, the named CSIRO inventors, as identified above, and/or others substantively involved in the prosecution of the '069 patent knew or reasonably should have

known that the above described papers and HF radios and modems would have been materially relevant to the examiner in deciding whether to allow the claims.

88.     Upon information and belief, the named CSIRO inventors, as identified above, and/or others substantively involved in the prosecution of the '069 patent acted with culpable intent to mislead or deceive the USPTO by withholding known prior art and by making arguments for patentability which could not have been made had the art been disclosed.

89.     In fact, the only prior art that the named inventors disclosed to the USPTO consisted of four references that the European Patent Office brought to the inventors' attention during the prosecution of their corresponding European patent application.  As stated in their lone Information Disclosure Statement dated February 3, 1995:  "Such prior art has come to the applicants' attention by being cited in a Search Report issued October 11, 1994 on the corresponding European application . . . ."  The named inventors did not disclose to the USPTO any of the prior art of which they were independently aware.

90.     Upon information and belief, the failure by the named CSIRO inventors, as described above, and/or others substantively involved in the prosecution of the '069 patent to disclose the HF Radios and Modems and the Percival, Barry, Rault, Le Floch, Bingham, and Mitzlaff papers to the USPTO examiner during the prosecution of the '069 patent was done with an intent to deceive the USPTO and constitutes inequitable conduct and a violation of the duty of disclosure, thereby rendering the '069 patent unenforceable.

**Reexamination of the '069 Patent**

91.     On February 20, 2009, the USPTO issued an Order Granting Reexamination of the '069 Patent, Control No. 90/010,367.  In the Order, the USPTO found that substantial new questions of patentability were raised by the Percival paper, the Rault paper, the Bingham paper,

and the Mitzlaff paper, which confirms that each of these withheld references would have been important to a reasonable examiner and thus material to the patentability of the '069 patent.

92.     On November 14, 2009, the USPTO issued a non-final Office Action in the Reexamination of the '069 Patent, Control No. 90/010,367.  The Office Action rejected all of the claims (1-72) of the '069 patent.  The Office Action rejected certain claims as anticipated by the Percival paper, and rejected all of the claims as obvious in view of several combinations of art that include the Rault paper, the Bingham paper, and the Mitzlaff paper.  The rejections in view of the Percival paper, the Rault paper, the Bingham paper, and the Mitzlaff paper show that each of these withheld references would have been important to a reasonable examiner and thus material to the patentability of the '069 patent.

93.     On January 28, 2010, CSIRO filed an Amendment in the Reexamination of the '069 patent, Control No. 90/010,367.  In the Amendment, CSIRO canceled claims 1-3, 7-19, 33-35, 48-51, and 61-63.  Each of these claims was rejected by the USPTO in the Office Action as being anticipated by the Percival paper.  Each of these claims was also rejected by the USPTO as obvious in view of the combination of the Rault paper and the Mitzlaff paper, and other combinations of art that include these references.  Each of these claims was also rejected by the USPTO as obvious in view of a combination of art that includes the Bingham paper.  CSIRO's cancellation of these claims shows that each of the Percival paper, the Rault paper, the Bingham paper, and the Mitzlaff paper is material to the patentability of the claims of the '069 patent.

94.     In the Amendment, CSIRO admits that use of orthogonal frequency division multiplexing (OFDM) in a wireless LAN was considered by others prior to the invention of the '069 patent, but states that "in the few cases where OFDM was considered for use in a wireless LAN it was quickly rejected."  The Amendment then discusses two papers that reject use of

OFDM, but omits any discussion of several other references of which CSIRO is aware (identified below) that did not reject the use of OFDM in a wireless LAN.

95.     CSIRO was aware of at least the following references by virtue of prior litigation involving the '069 patent: Okada et al., "Wideband Indoor Radio System Using Orthogonal Multicarrier Modulation," IEEE 1992; Chini et al., "Multi Carrier Modulation for Indoor Wireless Communication," Proceedings of ICUPC '93, pp. 675-678; Xue et al., "Air Interface Considerations for Wireless LANs," Radio Relay Systems, 11-14 October 1993; and Morris, "Optimization of a Broadband Modulation Scheme for the Indoor Radio Channel," Department of Electrical and Computer Engineering, University of Calgary, September 1993.  Each of these references advocates use of OFDM in a wireless LAN.

96.     CSIRO's statement in the Amendment that "in the few cases where OFDM was considered for use in a wireless LAN it was quickly rejected" is misleading because it implies that OFDM was only considered for use in a wireless LAN in the two papers discussed in the Amendment and/or was universally rejected.  This misleading statement in the Amendment is a violation of CSIRO's duty of candor to the USPTO under 37 C.F.R. § 1.56.

97.     CSIRO's omission in the Amendment of any mention of the above-identified references of which it was aware, each of which advocates use of OFDM in a wireless LAN, is a violation of CSIRO's duty of candor to the USPTO under 37 C.F.R. § 1.56.

**Fifth Affirmative Defense**

98.     The '069 patent is unenforceable for patent misuse, based on, but not limited to, CSIRO's continuing unlawful attempts to enforce the '069 patent, which CSIRO knows or should know is invalid, unenforceable, and/or not infringed.

**Sixth Affirmative Defense**

99.    CSIRO is estopped from alleging that wireless LAN products that are allegedly compliant or compatible with the Institute of Electrical and Electronics Engineers ("IEEE") 802.11a/g/n standards infringe any claims of the '069 patent, based on, but not limited to, statements made and actions taken before the USPTO by the '069 patent applicants and their attorneys in order to obtain issuance of the '069 patent.

### Seventh Affirmative Defense

100.    CSIRO's enforcement of the '069 patent is barred in its entirety by the doctrine of equitable estoppel.  This estoppel is created by, but not limited to, CSIRO's failure to fulfill its assurance to the IEEE that it would license the '069 patent on reasonable and non-discriminatory terms.

### Eighth Affirmative Defense

101.    CSIRO's enforcement of the '069 patent is barred, in whole or in part, by the doctrine of prosecution history estoppel.

### Ninth Affirmative Defense

102.    CSIRO's claims for relief are barred, in whole or in part, by the equitable doctrine of unclean hands.

### Tenth Affirmative Defense

103.    CSIRO is not entitled to a permanent injunction, because: (1) CSIRO is not likely to prevail on the merits; (2) CSIRO has not suffered and will not suffer irreparable harm because of Sony's conduct; (3) any harm to CSIRO would be outweighed by the harm to Sony if an injunction were entered; (4) CSIRO has an adequate remedy at law even if CSIRO were to prevail in this action; (5) the public interest would not be served by an injunction; and (6) CSIRO is estopped from seeking an injunction.  Furthermore, CSIRO has publicly and legally committed

to license the '069 patent on reasonable, non-discriminatory and non-exclusive terms. Thus, even if CSIRO should prevail on the issues of infringement, enforceability, and validity, CSIRO has waived any right to an injunction with respect to that patent.

### Eleventh Affirmative Defense

104.    CSIRO is barred by 35 U.S.C. § 288 from recovering any costs associated with this suit.

### Twelfth Affirmative Defense

105.    Upon information and belief, some or all of CSIRO's claims for relief concerning the '069 patent are limited by failure to comply with the marking and notice requirements of 35 U.S.C. § 287(a).

### Thirteenth Affirmative Defense

106.    As to some or all of CSIRO's claims concerning the '069 patent, CSIRO's recovery for alleged infringement, if any, is limited to any alleged infringement committed no more than six years prior to the filing of its counterclaim, pursuant to 35 U.S.C. § 286.

### Fourteenth Affirmative Defense

107.    CSIRO'S requested relief is barred or otherwise limited based on exhaustion, the first-sale doctrine, and/or restrictions on double recovery.

### Fifteenth Affirmative Defense

108.    CSIRO is not entitled to enhanced or increased damages for willful infringement, because Sony has not engaged in any conduct that meets the applicable standard for willful infringement.

### SONY'S PRAYER FOR RELIEF

WHEREFORE, Sony prays for judgment on CSIRO's Complaint as follows:

      (a)     that CSIRO's Complaint be dismissed, with prejudice, and that CSIRO take nothing by its Complaint;

      (b)     that judgment be entered declaring that United States Patent No. 5,487,069 is invalid, void, unenforceable, without any force or effect, and has not been infringed by Sony;

      (c)     that an order be entered enjoining CSIRO, its officers, directors, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, from alleging, asserting, or stating that Sony has infringed or is infringing United States Patent No. 5,487,069, or has used or is using any alleged invention claimed therein, or that the patent is valid or enforceable;

      (d)     that Sony be awarded its costs and attorneys' fees in this matter; and

      (e)     that Sony be awarded such other relief as the Court deems just and proper.

**II.     SONY COMPUTER ENTERTAINMENT AMERICA INC.'S AND SONY ELECTRONICS INC.'S COUNTERCLAIMS**

**THE PARTIES**

1.      Defendant and Counterclaimant Sony Computer Entertainment America Inc. ("SCEA") is a corporation organized and existing under the laws of Delaware and maintains its principal place of business 919 East Hillsdale Blvd., Foster City, CA 94404

2.      Defendant and Counterclaimant Sony Electronics Inc. ("SEL") is a corporation organized and existing under the laws of Delaware and maintains its principal place of business at 16530 Via Esprillo, San Diego, CA 92127.

3.      Upon information and belief, Plaintiff and Counterclaim-Defendant CSIRO is a corporate body established pursuant to the *Commonwealth Science and Industry Research Act 1949* of the Commonwealth of Australia and has a principal place of business at Limestone Avenue, Campbell ACT 2612, Australia.

4.      The U.S. Court of Appeals for the Federal Circuit determined that CSIRO is not immune from the jurisdiction of the federal or state courts of the United States under the Foreign Sovereign Immunity Act, 28 U.S.C. § 1605(a).  In particular, CSIRO has engaged and is engaging in commercial activities in the United States within the meaning of 28 U.S.C. § 1605(a), including licensing, seeking to profit from the '069 patent, and enforcing the '069 patent.

**JURISDICTION AND VENUE**

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338 with respect to claims arising under the Patent Act, 35 U.S.C. § 101 et seq., and pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq.

6.      There is also diversity of citizenship between CSIRO and both SCEA and SEL and the amount in controversy exceeds $75,000, exclusive of interest and costs.  Therefore, this Court also has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a).

7.      This Court has personal jurisdiction over CSIRO, which has availed itself of the Texas courts by making in this Court claims of alleged infringement of the '069 patent, and upon information and belief has entered into contracts with Texas residents, has recruited Texas residents for employment inside Texas, and has contacted, for the purposes of enforcing the '069 patent, Dell, Inc., a corporation that has its principle place of business in Texas.

8.      Venue is proper in this judicial district pursuant to *inter alia* 28 U.S.C. § 1391 (b) and (f).

### FIRST COUNT
### (Declaration of Non-infringement)

9.      SCEA and SEL incorporate paragraphs 1-8 of their above Counterclaims by reference as though fully set forth herein.

10.      CSIRO has brought a patent infringement action against SCEA and SEL.

11.      CSIRO has alleged that it "holds all rights and interest in the '069 patent."

12.      CSIRO has alleged and continues to allege that SCEA and SEL have directly and indirectly infringed the '069 patent.

13.      An actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, has arisen and exists between CSIRO and both SCEA and SEL concerning whether SCEA and SEL have infringed and are infringing any valid and enforceable claim of the '069 patent.

14.      SCEA and SEL have never manufactured, used, imported, offered for sale and/or sold in the United States any products which infringe, either literally or under the doctrine of equivalents, any valid and enforceable claim of the '069 patent.

15.     SCEA and SEL have never contributed to the infringement of, or induced others to infringe, any valid and enforceable claim of the '069 patent.

16.     By virtue of the foregoing, SCEA and SEL desire a judicial determination of their respective rights and duties with respect to any alleged infringements of the '069 patent.

17.     A judicial declaration is necessary and appropriate at this time so that the parties may proceed in accordance with their respective rights and duties determined by the Court.

**SECOND COUNT**
**(Declaration of Patent Invalidity and/or Unenforceability)**

18.     SCEA and SEL incorporate paragraphs 1-17 of their above Counterclaims by reference as though fully set forth herein.

19.     CSIRO has brought a patent infringement action against SCEA and SEL.

20.     An actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, exists between CSIRO and both SCEA and SEL regarding invalidity and/or unenforceability of the claims of the '069 patent.

21.     Upon information and belief, the claims of the '069 patent are invalid and/or unenforceable for failing to comply with the provisions of the Patent Laws, Title 35 of the United States Code, including without limitation one or more of 35 U.S.C. §§ 101, 102, 103, and 112, and/or the rules, regulations and law pertaining thereto.

22.     Upon information and belief, the '069 patent is unenforceable due to inequitable conduct committed during its prosecution.  Upon information and belief, the named CSIRO inventors, as described below, and/or others substantively involved in the prosecution of the application leading to the '069 patent were aware of information material to the patentability of the claims of the '069 patent, and they withheld that information from the U.S. Patent & Trademark Office ("USPTO") with the intent to deceive the USPTO.

23.     The withholding of material prior art with the intent to deceive the USPTO is a violation of the duty of disclosure under 37 C.F.R. § 1.56 and constitutes inequitable conduct.

24.     SCEA and SEL incorporate paragraphs 4-97 of the above Affirmative Defenses by reference as though fully set forth herein.

25.     By virtue of the foregoing, SCEA and SEL desire a judicial determination of their respective rights and duties with respect to the invalidity and/or unenforceability of the claims of the '069 patent.

26.     A judicial declaration is necessary and appropriate at this time so that the parties may proceed in accordance with their respective rights and duties determined by the Court.

## PRAYER FOR RELIEF

WHEREFORE, SCEA and SEL pray for the following relief:

A.     A declaration that SCEA and SEL do not infringe any claim of the '069 patent.

B.     A declaration that all claims of the '069 patent are invalid and/or unenforceable.

C.     An injunction restraining CSIRO, and its officers, directors, members, employees or anyone acting in concert therewith, from continuing or threatening to prosecute and from filing or threatening to file any claims for patent infringement of the '069 patent against SCEA, SEL or any of SCEA's or SEL's customers or affiliates.

D.     An injunction restraining CSIRO, and its officers, directors, members, employees or anyone acting in concert therewith, from seeking any form of injunction, including without limitation temporary, preliminary, or permanent, against SCEA, SEL or any of SCEA's or SEL's customers or affiliates based on the '069 patent.

E.     A judgment declaring this case exceptional under 35 U.S.C. § 285 and awarding SCEA and SEL their attorneys' fees, prejudgment interest, and costs;

F.      For such other and further relief as this Court deems just.


Dated: March 12, 2010                         WHITE & CASE LLP



                                    _____/s/ Warren S. Heit_____
                                    Warren S. Heit (Lead Attorney)
                                    CA State Bar No. 164658
                                    Email: wheit@whitecase.com
                                    WHITE & CASE L.L.P.
                                    3000 El Camino Real
                                    5 Palo Alto Square, 9th Floor
                                    Palo Alto, CA 94306
                                    Tel: (650) 213-0300
                                    Fax: (650) 213-8158

                                    Andy Tindel
                                    State Bar No.: 20054500
                                    Email: atindel@andytindel.com
                                    PROVOST UMPHREY LAW FIRM L.L.P.
                                    112 East Line Street, Suite 304
                                    Tyler, TX 75702
                                    Tel: 903-596-0900
                                    Fax: 903-596-0909


                                    Attorneys for Defendants and
                                    Counterclaimant,
                                    SONY CORPORATION,
                                    SONY CORPORATION OF AMERICA,
                                    SONY COMPUTER ENTERTAINMENT
                                    INC.,
                                    SONY COMPUTER ENTERTAINMENT
                                    AMERICA INC.,
                                    SONY ELECTRONICS INC.

## JURY DEMAND

Sony demands a trial by jury as to all issues so triable presented in CSIRO's Complaint and Sony's Answer and SCEA and SEL's Counterclaims, pursuant to Federal Rule of Civil Procedure 38(b).

Dated: March 12, 2010

WHITE & CASE LLP

___/s/ Warren S. Heit_____
Warren S. Heit (Lead Attorney)
CA State Bar No. 164658
Email: wheit@whitecase.com
**WHITE & CASE L.L.P.**
3000 El Camino Real
5 Palo Alto Square, 9th Floor
Palo Alto, CA 94306
Telephone: (650) 213-0300
Facsimile: (650) 213-8158

Andy Tindel
State Bar No.: 20054500
Email: atindel@andytindel.com
**PROVOST UMPHREY LAW FIRM L.L.P.**
112 East Line Street, Suite 304
Tyler, TX 75702
Tel: 903-596-0900
Fax: 903-596-0909

Attorneys for Defendants and
Counterclaimants,
SONY CORPORATION,
SONY CORPORATION OF AMERICA,
SONY COMPUTER ENTERTAINMENT
INC.,
SONY COMPUTER ENTERTAINMENT
AMERICA INC.,
SONY ELECTRONICS INC.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that counsel of record who have consented to electronic service are being served this 12th day of March, 2010, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).  Any other counsel of record will be served by electronic mail, facsimile transmission and/or first class mail on this date.

_____/s/ Warren S. Heit_____
Warren S. Heit
